## IRENE B. ELLIOTT *vs.* GEORGE ELLIOTT.

DIVORCE—GROUNDS—"EXTREME CRUELTY."

A husband, who was unreasonably jealous of his wife, and who showed it in such ways as to make her very uncomfortable and unhappy, and who wrote an anonymous note indicating that he thought his wife was unfaithful to him, was not guilty of extreme cruelty, justifying a divorce on that ground at the suit of the wife.

(*February* 22, 1915.)

PENNEWILL, C. J., and BOYCE, J., sitting.

*John B. Hutton* for plaintiff.

Superior Court, Kent County, February Term, 1915.

ACTION FOR DIVORCE (No. 8, February Term, 1915) by Irene B. Elliott against George Elliott on the ground of extreme cruelty. Decree *nisi* refused.

The petitioner, after proving her marriage to the defendant, testified, in effect, that very soon thereafter her husband began to accuse her of unfaithfulness to him, and continued to do so almost constantly until she left him; that he was very jealous of any one who spoke to her, even women; that he did not want her to have the company of women, except his sisters; that in June, 1913, "my little boy and I went home from church about 9 o'clock, and as I was walking through the room I kicked against a pocketbook, on the floor and a piece of paper fell out. I said to my husband, 'What is that doing on the floor?' And as I picked it up, he jumped from the couch and said, 'Give it to me,' and struck at me. The note read as far as I recollect that I had been out with some man and I was sick, and the man spoke about me having been with him and enjoyed the evening very much." She testified that the note was not signed, but had been written by her husband and placed on the floor; that she had never been unfaithful to him; that her husband's conduct toward her was such as to affect her health, so that she could not work; that her husband never used any physical violence against her, except to strike at her as stated; that she had been separated from her husband more than two years; and could not live with him; and that after leaving him she had to have a physician to treat her.

PENNEWILL, C. J., delivering the opinion of the court.

In the *McClenahan case*, 2 *Boyce* (24 *Del.*) 599, 80 *Atl.* 677, the court said:

"The question before the court may for convenience of treatment be sub-divided thus:

"First. Whether under the laws of this state a divorce can be decreed for extreme cruelty, when it is not shown that any acts of personal violence have been committed, or even threatened.

"Second. Whether the facts proved are sufficient to sustain a decree for divorce on the ground of extreme cruelty, if acts other than physical violence constitute ground for divorce.

"It appears to be well settled law in England and in some of the states in this country, that a divorce may be decreed for extreme cruelty even though no acts of personal violence were committed or threatened; and this

has been termed the modern doctrine. In some jurisdictions it is the result of statutory enactment, and in others of judicial decisions."

This rule or doctrine has never been acted upon or distinctly recognized in this state, although the court in the *McClenahan case* did say:

"It has been held in many cases in this country and in England that when the ill conduct complained of affects the mind, and through the mind impairs the health of the body and renders cohabitation unsafe, a divorce may be decreed consistently with the rule which requires that the injury shall be to body and not to the mind alone."

But the court also said:

"It is not necessary in the present case to approve or disapprove of such decisions, or to express any opinion respecting the modern doctrine of extreme cruelty, because, assuming it to be sound and proper, the question remains, Should a divorce be granted the plaintiff under the facts proved?"

The court further said:

"Even under the modern rule mental suffering that would justify a decree for divorce, must be the voluntary and conscious act of the husband, and the result of some direct acts or words of the husband upon the mind or person of the wife."

While the acts of the husband relied upon in the *McClenahan case* were entirely unlike those in the present case, they did expose the wife to disgrace, publicity and humiliation, and because of the mental anguish caused thereby, the wife's health was very seriously impaired. But the court refused the divorce, saying:

"No divorce has been heretofore granted in this state on the ground of extreme cruelty under our statute, unless personal violence, or some revolting act equivalent thereto was shown, or a reasonable apprehension that such violence would be inflicted.

"We do not say that there may not be a case of mental anguish and pain, caused intentionally, consciously and directly by one of the parties to the marriage relation, and of such character and extent as to endanger the life or health of the other, or render cohabitation unsafe, and thereby justify a divorce. But such a case is not now before us, and we express no opinion thereon."

In the present action the facts shown do not impress the court as making out a clear case for the plaintiff even under the so-called modern rule. When carefully analyzed and considered

the testimony establishes the fact that the husband was unreasonably jealous of his wife, and showed it in such ways as to make her very uncomfortable and unhappy. This may have affected the plaintiff's nervous system to some extent. The anonymous note that appears to have been written by the husband, and which indicated that he thought his wife was unfaithful was grounded in jealousy; but it was the only act of the kind he did commit. Aside from that all he did and said, of which the plaintiff complains, were such things as a foolish and unreasoning jealous man will do and say. The defendant was jealous and suspicious of his wife not only with respect to men but women friends also, not wanting his wife to be intimate with any outside of their families.

If a divorce may be granted for jealousy evidenced and accompanied by such words and acts as are proved in this case, no physical violence or cruelty at all being shown, the door will be open very wide for actions of this kind, and decrees will be much more common than ever before.

The court are disposed to curtail rather than increase divorces in this state, and being of the opinion that the facts proved do not clearly establish the plaintiff's right to a divorce, a decree *nisi* is refused.